# IN RE CHASE.

---

### PATENTS; PATENTABILITY; PROCESS.

While a process for tempering metallic articles claimed by an applicant may be a great improvement over one for which a patent has been granted, it involves no invention to supply the patentee's apparatus with a refrigerating medium adapted to reduce the temperature to a lower point than he indicated, especially when the lower temperature has been used in the processes of others.

No. 556.  Patent appeals.  Submitted May 11, 1909.  Decided June 1, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting two of four claims in an application for a patent.                                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

Aurin M. Chase filed an application for an improvement in a tempering process, having four claims.

Claims one and two read as follows:

"1. The herein-described process of tempering metallic articles which consists in providing a bath of tempering liquid, circulating a refrigerating medium therethrough to lower the temperature of the bath to a predetermined point, approximating the freezing point, immersing in the bath the first article or batch of articles of a series to be tempered, maintaining the circulation of the refrigerating medium to counteract the heat given off by said article or batch of articles, whereby the bath is maintained at a substantially constant temperature during the tempering treatment, removing the first article or batch of articles, and treating another article or batch of articles under similar conditions of the tempering bath.

"2. The herin-described process of tempering metallic articles, which consists in providing a bath of tempering liquid, immersing therein the article or articles to be tempered, and circulating in contact with the bath an artificial refrigerant so proportioned to the bath and the heat given off by the article or articles under treatment that the said bath will be maintained at a substantially constant temperature approximating the freezing point."

Two other claims restricted the process to the circulation of a refrigeratory medium so proportioned to the heat given off that a portion of the liquid bath, less than the whole, will be congealed and maintained in substantially a congealed condition. The last two claims were allowed, and the first two rejected. From this rejection applicant has appealed.

*Messrs. Parsons, Hall & Bodell* for the appellant.

*Mr. Frederick A. Tennant* for the Commissioner of Patents.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The apparatus disclosed for carrying out the process, and the description, show that the process consists in circulating through a tempering bath, by means of a suitable conduit, a refrigeratory fluid of such temperature that the bath shall be constantly maintained at a temperature approximating the freezing point, the heating of the bath by the hot materials inserted therein being constantly counteracted by the lowering of the temperature through the circulation of the cooling medium. It is well known in the art of tempering metals that it is desirable to maintain the bath at a comparatively low temperature, kept as constant as practicable in order to produce uniform tempering in the articles successively immersed therein. Each successive immersion tends to increase the heat, so that each will have a different tempering. Applicant states that, for the purpose of securing uniform results, it had been customary to introduce ice into the tempering bath, as well also to employ a number of tanks or receptacles for the fluid; and he notes the difficulty of preserving a uniform temperature by such methods. Simonds, who has a patent for a hardening process, issued May 15, 1883, sought to procure uniformity of temperature in the tempering tank through a pipe in the form of a flat spiral with coils nearly abutting, arranged near the top and to one side of the tank, slightly beneath the tempering fluid. A cold circulating agent is applied through this pipe at the point where the tempering fluid is most heated by the immersed metal. The pipe is connected with an overhead tank supplied with cold water, and the length of pipe and volume of cold water should be sufficient to keep the temperature of the tempering fluid below 85 degrees. He says in his specification: "I am aware that water has been circulated through tempering tanks in a variety of ways; and the novelty of my invention consists in the arrangement of the pipes near the top and to one side of the tank and immediately beneath the tempering fluid." Another reference by the Office is to the patent to Gillon, March

20, 1888, for a method of tempering Bessemer steel wire. This process consists in first treating the wire to give it shape, and then submerging it in a bath of molten metal of a temperature, preferably, of about 650 degrees. It was then cooled' by sudden immersion in a common tempering bath of water, oil or other tempering fluid, the temperature of which should not be over 60 degrees; the best results being attained with the temperature between 30 and 40 degrees. Gillon shows no form of tempering tank, or means for reducing the same to the desired temperature and keeping it uniform.

Applicant and Simonds use substantially the same means for preserving the uniformity of the temperature of the tempering fluid. Both introduce a coil of pipe through which the cooling medium flows. The only difference in their processes is that Simonds indicates a temperature of about 85 degrees, instead of one approximating the freezing point. Former processes using ice in the bath would approximate the freezing point; and Gillon's process calls for a temperature between 30 and 40 degrees, which is approximately freezing point. In the light of the old methods and these patented methods, it is clear that, if there is any patentable novelty in the plaintiff's process, it consists entirely in that pointed out specifically in the claims that were allowed. While his process may be a great improvement upon Simonds', it involved no invention to supply the latter's apparatus with a refrigerating medium adapted to reduce the temperature to a lower point than he indicated, and especially when that lower temperature was used in the processes of others.

The appealed claims were rightly rejected, and the decision will be affirmed. The Clerk will certify this decision to the Commissioner of Patents. *Affirmed.*